IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA E. WILSON,

        Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

No. 6:14-cv-01326-HZ

OPINION & ORDER

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309

    Attorney for Plaintiff

//

//

1 - OPINION & ORDER

Billy J. Williams
Acting United States Attorney, District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

Nicole Jabaily
Special Assistant United States Attorney
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Barbara Wilson brings this action under the Social Security Act ("Act"), 42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. Wilson's challenge to the ALJ's decision is based almost entirely on the ALJ's analysis of her credibility. Because the ALJ gave legally sufficient reasons for discounting her credibility, the Court finds no error and the Commissioner's decision is affirmed.

## BACKGROUND

Wilson applied for DIB on January 25, 2011, alleging an onset date of January 13, 2011. Tr. 180. The Commissioner denied her application initially and after reconsideration, and Wilson requested a hearing before an ALJ. Tr. 90, 98, 101. After a hearing in November of 2012, Administrative Law Judge ("ALJ") Glenn G. Meyers found Wilson was not disabled. Tr. 15–25. Wilson appealed, but the Appeals Council denied her request for review, making the ALJ's decision the Commissioner's final decision that Wilson now challenges in this Court. Tr. 1–7.

# SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Wilson met the insured status requirement for DIB through December 31, 2015. Tr. 17. At step one, the ALJ found Wilson had not engaged in substantial gainful activity since January 13, 2011, her alleged onset date. Tr. 17. At step two, the ALJ found Wilson had the "following severe impairments: lumbosacral spondylosis without myelopathy, postlaminectomy syndrome, lumbar region, sleep apnea, major depressive disorder, anxiety disorder, and post-traumatic stress disorder[.]" Tr. 17. At step three, the ALJ found Wilson's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 18. The ALJ next found that Wilson had the following RFC: "[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to unskilled, repetitive, routine work with no public contact, and to occasional contact with supervisors and co-workers." Tr. 20. At step four, the ALJ found that Wilson was not able to perform any of her past relevant work. Tr. 23–24. At step five, the ALJ found that Wilson was not disabled because jobs existed in significant numbers in the national economy that she could perform, including document preparer and file assembler. Tr. 24–25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Wilson contends that the "ALJ's decision is not sustainable because the full limiting effects of Ms. Wilson's mental limitations were not included in the residual functional capacity." Plaintiff's Brief ("Pl. Br.") at 5. Wilson proffers two separate grounds for challenging the ALJ's formulation of her RFC: first, that the ALJ improperly discounted the credibility of Wilson's testimony about the limiting effects of her mental and physical limitations, and second that the ALJ's findings at step two were "not consistent with the residual functional capacity listing." Plaintiff's Brief ("Pl. Br.") at 7, 17.

   **1. Credibility**

In determining a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical records, lay testimony, and the "effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins, 466 F.3d at 883 (quoting SSR 96–8p, 1996 WL 374184, at *5); see also 20 C.F.R. §§ 404.1529(a), 404.1545(a), 416.929(a), 416.945(a) (explaining that, in determining whether a claimant is disabled, the Social

Security Administration considers "all . . . symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc* )). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

The ALJ summarized Wilson's testimony as follows:

> At the hearing, [Wilson] testified that she was in pain 24 hours a day and that the pain did not stop. She testified that she had good days, bad days, and mediocre days. [Wilson] testified that on bad days she was unable to get out of bed. She testified that she was taking muscle relaxers and tramadol, but that these medications did not relieve her pain. [Wilson] testified that her back pain, depression, and anxiety kept her barricaded in her house, and that she was unable to do any of the things she used to do. [Wilson] reported problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and concentration.

Tr. 20. At step one, the ALJ found that Wilsons's "medical determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 20–21.

There is no evidence of malingering in the record. Therefore, the ALJ's reasons for discounting Wilson's credibility must be clear and convincing. The ALJ explained that objective medical evidence was inconsistent with her reports of debilitating back pain, that Wilson reported improvement of her pain with physical therapy, that her sleep apnea was "significantly improved with treatment," that her allegations of disabling mental limitation were "inconsistent with a number of clinical findings and her own self report, and that her daily activities were "inconsistent with the allegations of disabling limitations." Tr. 21.

After reviewing the record, the Court finds the ALJ's numerous reasons for discounting Wilson's credibility meet the required "clear and convincing" standard. First, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ discounted Wilson's credibility because the

7 - OPINION & ORDER

"[o]bjective medical evidence is inconsistent with [Wilson's] report of limiting physical pain." Tr. 21. The ALJ pointed to reports that "[i]maging of Wilson's lumbar spine has been largely unremarkable." Tr. 21 (citing Tr. 295); see also Tr. 422. Her medical providers regularly noted she had full range of motion, 5/5 motor strength, and normal gait, sensations, and reflexes. Tr. 400, 402, 404, 411, 415, 444, 447. In a report from an office visit approximately two weeks prior to Wilson's appearance before the ALJ, Dr. Valerie Coon wrote that she "[did] not think this back pain is neurogenic in any fashion, and I reassured [Wilson] that her prior fusion has healed well. There is no obvious mechanical cause or imaging that would cause this pain that has been affecting her so greatly." Tr. 521. Although, standing alone, it would not be a sufficient reason for discounting Wilson's testimony about her debilitating pain, the ALJ could reasonably rely on the lack of objective medical evidence in combination with other, legally sufficient reasons to discount Wilson's credibility.

Second, the ALJ noted that Wilson reported to her medical providers that she began visiting a physical therapist and that she thought the physical therapy was helping relieve her symptoms. Tr. 475 (Wilson reported "seeing a physical therapist and is making some changes with her program but she feels this is working); Tr. 521 (Wilson reported "very good benefit from her recent physical therapy experience, and she is now dedicated to a weight loss program which includes physical training with exercise and diet."); Tr. 527 ("Physical therapy seems to be giving Barbara more flexibility and reducing her back pain."). Impairments that can be effectively controlled with treatment such as physical therapy are not considered disabling for the purposes of determining whether a claimant is disabled, and thus it was legitimate for the ALJ to rely on evidence of effective treatment in discounting Wilson's credibility. Espenas v. Colvin, No. 3:14-CV-00355-HZ, 2014 WL 7405655, at *3 (D. Or. Dec. 30, 2014) (citing 20

C.F.R. § 404.1529(c)(3)(iv) & (v); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Warre v. Comm'r of Soc. Sec. Admin, 439 F.3d 1001, 1006 (9th Cir. 2006)).

Third, the ALJ discounted her credibility because Wilson's "daily activities . . . are inconsistent with the allegations of disabling limitations." Tr. 21. Wilson claims that her back pain, depression, and anxiety kept her barricaded in her house, and that, because of her anxiety, she is terrified to go outside and is unable to be in a room with more than five people. Tr. 51, 232. Yet her therapist reported that she regularly attends church and has "benefitted from the affiliations she has made there." Tr. 428. She described attending church meetings and regularly singing at church with the help of her anxiety medication. Tr. 428–29. Wilson reported to her therapist taking a least two trips to a casino, staying most of the day, and considering singing there. Tr. 428, 430. She reported going shopping and camping with friends. Tr. 38–40; 235. Wilson also reported that she can pay her bills, manage a savings account and check book, and engage in activities like scrapbooking and playing video games, which conflicts with her claim that she is unable to concentrate. Tr. 236.

Wilson claims the ALJ erred when he failed to explain how these daily activities could transfer to the workplace, but that argument misunderstands the ALJ's analysis. There are two separate reasons an ALJ can rely on evidence of a claimant's daily activities to evaluate the credibility of her claimed limitations. One is if the claimant "engages in numerous daily activities involving skills that [are] transferrable to the workplace." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citations omitted). The other is when a claimant engages in daily activities that are inconsistent with the severity of symptoms alleged. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, the ALJ reasoned that Wilson's allegations of crippling anxiety were contradicted by her involvement at church, multiple casino trips, and her ability to shop with

9 - OPINION & ORDER

friends and manage her finances. These contradictions are a legitimate reason for finding Wilson less than credible.

Wilson argues vigorously that the ALJ erred in concluding that her "allegations of disabling mental limitations are inconsistent with a number of clinical findings and her own self report." Pl. Br. at 7 (citing Tr. 21). But given the numerous, legally sufficient reasons the ALJ gave for discounting Wilson's credibility, any other error in the ALJ's analysis of Wilson's testimony is harmless. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

Wilson also argues the ALJ erred by not discrediting specific portions of her testimony, such as her claimed inability to be "in a room with more than five people without having anxiety attacks." Tr. 232. But the ALJ considered Wilson's claims that she "do[esn't] want to leave my house" and that she was "terrified to go outside" because of her high anxiety, and rejected her testimony as not credible. See Tr. 20 (ALJ characterizes Wilson's testimony as claiming "her back pain, depression, and anxiety kept her barricaded in her house"). The ALJ adequately summarized the evidence, interpreted it, and gave legally sufficient reasons for his decision; the law does not require the ALJ to specifically address every line of testimony or every response on the claimant's application for benefits. See Smolen, 80 F.3d at 1281.

Finally, Wilson argues the ALJ "cherry picked" the record to support his "pre-ordained conclusion" that she was not disabled. Pl. Br. at 17. The Court disagrees. Although the record may be amenable to more than one reasonable interpretation, the ALJ's conclusions about

friends and manage her finances. These contradictions are a legitimate reason for finding Wilson less than credible.

Wilson argues vigorously that the ALJ erred in concluding that her "allegations of disabling mental limitations are inconsistent with a number of clinical findings and her own self report." Pl. Br. at 7 (citing Tr. 21). But given the numerous, legally sufficient reasons the ALJ gave for discounting Wilson's credibility, any other error in the ALJ's analysis of Wilson's testimony is harmless. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

Wilson also argues the ALJ erred by not discrediting specific portions of her testimony, such as her claimed inability to be "in a room with more than five people without having anxiety attacks." Tr. 232. But the ALJ considered Wilson's claims that she "do[esn't] want to leave my house" and that she was "terrified to go outside" because of her high anxiety, and rejected her testimony as not credible. See Tr. 20 (ALJ characterizes Wilson's testimony as claiming "her back pain, depression, and anxiety kept her barricaded in her house"). The ALJ adequately summarized the evidence, interpreted it, and gave legally sufficient reasons for his decision; the law does not require the ALJ to specifically address every line of testimony or every response on the claimant's application for benefits. See Smolen, 80 F.3d at 1281.

Finally, Wilson argues the ALJ "cherry picked" the record to support his "pre-ordained conclusion" that she was not disabled. Pl. Br. at 17. The Court disagrees. Although the record may be amenable to more than one reasonable interpretation, the ALJ's conclusions about

Wilson's credibility are supported by substantial evidence in the record, and therefore must be upheld. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

**2. Alleged Conflict Between Findings at Steps Two and Three and the RFC**

Wilson contends that the ALJ's findings at step two and three are inconsistent with the limitations in her RFC. She points out the ALJ at step two found she had "marked" difficulties in social functioning based on her testimony that her panic attacks sometimes prevent her from leaving her house. Tr. 19. She then argues that because "the ALJ was one half the way to finding [Wilson] disabled due to meeting a listing," the RFC should have included more functional limitations such as taking unscheduled breaks, arriving at work late or leaving work early, and being absent from work more than a typical employee.

The ALJ's finding that Wilson had one "marked" restriction in the "paragraph B" analysis does not compel a finding that she is disabled. To meet the "paragraph B" criteria at step two, the claimant must produce evidence of at least <u>two</u> of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Holohan v. Massanari, 246 F.3d 1195, 1204 (9th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B; § 12.06B). As explained above, it is the claimant's burden at steps one through four to produce evidence that she is disabled; a claimant who is "one half the way" to meeting a listing has failed to produce sufficient evidence to show that she actually meets a listing.

The ALJ addressed Wilson's mental limitations that were supported by substantial evidence in the record and appropriately limited her to unskilled, repetitive, routine work with no public contact and only occasional contact with supervisors and coworkers. Bayliss v. Barnhart,

427 F.3d 1211, 1217 (9th Cir. 2005) ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."). Therefore, the Court finds no error.

## CONCLUSION

For the reasons stated, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this \_\_\_\_8\_\_\_\_ day of \_\_\_\_\_Oct_____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge